Taking the charge as a whole, we do not feel that the single paragraph objected to constitutes prejudicial error, and had a proper assignment of error been made with reference to this question we feel that it would have to be overruled.

In the brief of counsel for defendant the objection to the charge was set forth as supporting material under the heading that the judgment was against the weight of the evidence and as such was overruled. The correctness of the charge, of course, has nothing to do with the weight of the evidence.

For the reasons above set forth, the application for rehearing is not well taken and will be overruled and the court will adhere to its original opinion in this case.

*Application overruled.*

PETREE, P. J., and MILLER, J., concur.

THE ELDER & JOHNSTON CO. ET AL., APPELLEES, *v.* HAINES, AUD., ET AL., APPELLANTS.

304

*Messrs. Marshall & Smith,* for appellees.

*Mr. Mathias H. Heck,* prosecuting attorney, and *Mr. W. Edmund Shea,* for appellants.

HORNBECK, P. J.   This is an appeal on questions of law from a judgment of the Common Pleas Court on an appeal from an order of the Board of Revision of Montgomery County, Ohio, fixing the taxable value of the land and structures described in the notice of appeal, and being lot No. 206 and part lot No. 205 with improvements thereon, located at the southwest corner of the intersection of Fourth and Main Streets in the central business district in the city of Dayton, Montgomery County, Ohio.

Appellants assign the following errors:

1. The lower court erred in not undertaking to determine true value in money of the property, land and improvements thereon, in question from the evidence introduced at the hearing had in such lower court.

2. The lower court erred in not considering whether the property, land and improvements in question were assessed for tax purposes by uniform rule according to value.   Section 2, Article XII of the Ohio Constitution.

3. The lower court erred when it denied the right of defendants-appellants to ascertain the exact income received by the owners and lessors of such land and improvements from the lessee.

4. The lower court erred when it permitted the introduction of evidence that had no bearing on the matter before it.

5. The lower court erred as to the degree of proof necessary for the plaintiffs-appellees to sustain their position that the land and improvements thereon were assessed beyond the true value in money.

We have been favored with the written opinion of Judge Mills of the Common Pleas Court, who decided the appeal from the Board of Revision and fixed the true value in money for taxation of the property described for the year 1954. The amount fixed for the land and the buildings was the same as that fixed in a judgment of the Common Pleas Court in a former case between the same parties and involving the same property for the years 1951, 1952 and 1953.

The land     $830,976
The buildings   587,928

    $1,418,904

It would serve no good purpose for us to restate and elaborate the extensive evidence offered by the parties in support of their respective contentions. Suffice it to say, that we are in accord with the conclusion reached in the decision of Judge Mills and with the reasons therein set forth supporting his conclusion.

Appellants urge in the fifth assignment that the trial judge erred in holding that ''The burden of proof is upon the appellants [appellees here] to prove by a preponderance of the evidence that the true value in money for tax purposes of said Lots 205 and 206 has not increased beyond the true value in money set by the Common Pleas Court and the Court of Appeals of Montgomery County for the years 1951, 1952 and 1953.'' Upon the evidence, as it had developed at the time that the trial judge prepared his decision, his holding as to the burden of proof could not have been prejudicial to either party for the reason stated in the next paragraph herein.

Some considerable argument is urged in the brief of appellees to support the contention that the doctrine of res judicata or estoppel by judgment required the order as made in the Common Pleas Court. The trial judge did not adopt either theory. It is not necessary to discuss the application of these doctrines, as the issues were drawn at the inception of the trial on the appeal to the Common Pleas Court from the Board of Revision. When the evidence developed that all the experts were in agreement that there had been no substantial increase in the taxable value of the property, the subject of the appeal,

the former judgment of the Common Pleas Court, affirmed by the Court of Appeals, resolved the issue.

It is not necessary for the benefit of learned counsel in this case to cite authority as to the finality of a judgment, which rests upon the necessity that there be an end of litigation.

When the record of the judgment in the former appeal was admitted, the taxable value of the property under consideration was indisputably fixed for the years 1951, 1952 and 1953. When, then, it developed that there had been no change in the taxable value of the property, the trial judge had no alternative but to fix the same value for the year 1954, and the judgment entry is based upon that determination.

Section 5713.01, Revised Code, provided, in part, in 1954:

"* * * The auditor shall revalue and assess at any time all or any part of the real estate in such county at its true value in money *where he finds that the same has changed in value* or is not on the tax list at its true value." (Emphasis ours.)

Inasmuch as the true value in money had been fixed for the years 1951, 1952 and 1953 by the former judgment, unless there had been a change in the value of the property under consideration, the auditor had no obligation to revalue and reappraise this property. The evidence, without dispute, supports the conclusion that there had been no change in the true value in money of the property under consideration between 1954 and 1951, 1952 and 1953. There is some suggestion in the testimony of Mr. Eisenberger that the increase in the appraised value for 1954 was made upon the order of the Board of Tax Appeals. The record does not disclose this order and, if made, its effect was not for the determination of the trial judge.

The second assignment of error is that the lower court erred in not considering whether the property or land in question was assessed for tax purposes by uniform rule according to value. Section 2, Article XII of the Ohio Constitution. That part of the Constitution applicable reads: "Land and improvements thereon shall be taxed by uniform rule according to value." It is not the intent of this provision of the Constitution that land ever shall be assessed in excess of its true value in money even though it be assessed by uniform rule.

The third assignment is that the court erred in denying to

defendants the right to ascertain the exact income received by the owners and lessors of the land and improvements under consideration from the lessee. By the terms of the lease, in addition to other payments made by the Elder & Johnston Company to the owners of the realty as annual rental there was a provision that the lessee would pay 2 per cent on yearly total sales above five million dollars plus taxes, insurance and cost of maintenance.

We are in agreement with appellants that income from the property under consideration for the years 1953 and 1954 from sales of the Elder & Johnston Company for those years had some probative effect upon the issue of the true value of the property in 1954. *Bennett* v. *Evatt, Tax Commr.*, 145 Ohio St., 587, 594, 62 N. E. (2d), 345; *City of Cleveland* v. *Cuyahoga County Board of Revision*, 96 Ohio App., 483, 115 N. E. (2d), 690. It is common knowledge that the Board of Tax Appeals recognizes by its rules, promulgated by statutory authority, Section 5715.29, Revised Code, that income from real property is an element in fixing its value for tax purposes.

We are not satisfied that the claimed error is clearly projected by the record for several reasons.

When the witness, Mr. Thomas E. Marshall, President and Treasurer of the Elder & Johnston Company was first on the stand, he was questioned:

"Q. Do you have the total sales of the Elder & Johnston Company in 1953? A. No, I do not.

"Q. Do you have the total sales of the Elder & Johnston Company in 1954? A. I don't have them before me. The total earnings for any year.

"Q. Could you bring them in?"

At this point, objection was interposed to the question, and considerable colloquy took place between counsel and the court. During this discussion, Mr. Smith inquired:

"Could we answer the question with sales increasing or decreasing without revealing * * * figures?"

The Court said: "Yes, the percentage."

"Mr. Shea: We want the total amount received by the Reibold heirs. I don't care how it is arrived at.
" * * *

"Mr. Smith: Let's use what we increased or decreased between any given period.

"The Court: And the per cent.

"Mr. Smith: The per cent gives the exact figures.

"* * *

"The Court: Will you be satisfied with the difference they paid in 1953 and paid in 1954?

"Mr. Shea: No, I want the total for 1953 and 1954.

"The Court: I think you are entitled to it, come in in the morning with it."

Mr. Marshall resumed the stand and explained that the base rental in 1954 was $95,000, and Mr. Shea interposed the question:

"Q. And 2 per cent above five million dollars gross sales? A. Net sales.

"Q. What do you mean by net sales? A. Gross sales less sales taxes, excise and state. That's all.

"Mr. Shea: Note exceptions to the ruling of the court, to permit the lessee to testify as to the net sales of the corporation."

The original question which had been put to the witness when he resumed the stand was: "What is the gross amount of rent paid by Elder & Johnston Company as lessee of the Reibold Building for the years 1953 and 1954?"

After the question had been put to the witness, Mr. Shea read from Section 5715.41, Revised Code, which relates to the power of the county auditor, his assistant, or a member of a county board of revision to "examine and make memorandums free of charge from any records, books," etc., and from public records. Immediately following that, the court said: "All right, subpoena those records, your objection is sustained."

It will be noted that the exception does not incorporate the language of the question, the answer to which was refused. It is not certain that the trial judge intended by the sustaining of the objection to hold that evidence was inadmissible, if in proper form, as to the total sales of the Elder & Johnston Company in 1953 and 1954. He may have meant that the information sought should be secured by subpoenaing the records of the Elder & Johnston Company. Or he may have been of opinion that the

gross sales of defendant company for the year 1953 were before the appraisers for the auditor when they fixed the value of the real property in question for that year, and were available from their records.

Mr. Eisenberger in his testimony said: "Well, we used other incomes on it. Like I say, we used the minimum guaranty that Elder & Johnston's are paying the Reibolds as of today, according to their lease, of $95,000, and the information we get from the volume of business that was done, there was about six and a half million overage, so we capitalized that at 2 per cent on the overage, which was $130,000 more."

Counsel for plaintiffs offered to permit the witness, Marshall, to testify whether the sales of defendant company increased or decreased in 1954 over 1953, and the percentage thereof. Inasmuch as it may be assumed that the appraisers for the auditor had the income of defendant company for 1953, the proposed answer would have demonstrated whether other and further evidence on the subject would have been of any probative value. Counsel for appellants refused to accept any answer other than that responsive to his question as to the gross rental of the defendant company for the years 1953 and 1954.

The fourth assignment of error is that the lower court erred when it permitted the introduction of evidence that had no bearing on the matter before it. Without comment, we hold against this contention.

The judgment is, therefore, affirmed.

*Judgment affirmed.*

WISEMAN and CRAWFORD, JJ., concur.