Mott Building, Inc., *v.* Perk, Auditor of Cuyahoga County, et al.

(No. 799048—Decided December 29, 1969.)

Common Pleas Court of Cuyahoga County.

*Mr. Henry DuLaurence*, for plaintiff.
*Mr. Thomas P. Cyrus*, for defendant.

MITCHELL, J. (by assignment)    This matter which was laid in equity came on for hearing on November 24, 1969, and was duly heard upon the petition of the plaintiff, Mott Building, Inc., the joint answer of the defendants, Ralph J. Perk, Frank M. Brennan, and Board of Revision of Cuyahoga County, the reply of the plaintiff, and the evidence presented by the parties.

### FINDINGS OF FACT

Upon due consideration thereof, the court finds that each of the defendants has been duly served with process personally, according to law, and that the matter is at issue and is properly before this court for disposition.

The court finds further that the defendant, Ralph J. Perk, is the duly elected, qualified and acting Auditor for Cuyahoga County; that the defendant, Frank M. Brennan, is the duly elected, qualified and acting Treasurer for Cuyahoga County; and that the defendant, Board of Revision of Cuyahoga County, is a body established by statutory provision for the purpose of reviewing the assessed valuations of real estate placed thereon by the Auditor for Cuyahoga County.

The court finds further that the plaintiff, Mott Building, Inc., was, during the years in which the assessed valuation is questioned, the owner of certain real estate located in Cuyahoga County, and known as Permanent Parcel Number 101-6-11.

The court finds further that on or about January 11, 1963, the plaintiff filed a complaint as provided by law, with the Board of Revision of Cuyahoga County, regarding the assessed valuation of the aforementioned real estate for the tax year 1962; and that on or about May 20, 1964, the board of revision found that said real estate was overassessed, and that pursuant thereto, the board of revision reduced the assessed valuation of said real estate from $935,980 to $755,720, *i. e.*, a reduction in the amount of $180,260.

The court finds that the complaint for the tax year 1962 was duly filed in the first half collection period, and that the same complaint on the same property was pending during the January 1963, tax collection period, and subsequently was not heard until February 1964, and that a decision by the board of revision was not made until May 20, 1964.

The court finds that the board of revision found that the property was overassessed in relation to its fair market value, and that, as a result, the board of revision reduced the assessed valuation for the tax year 1962.

The court finds further that although a complaint was pending for this property, the assessed valuation for the subject property for the tax year 1963 was retained at the former valuation, which the board of revision, on May 20, 1964, had found to be excessive and illegal, despite the fact that such a correction could have been made during the second half collection for the year 1963 (collected in 1964).

The court finds that despite the fact that the board of revision determined the assessed valuation to be excessive as of January 1, 1962, the auditor failed to correct the assessed valuation for 1963.

The court finds that there was no reappraisal made of the premises by the auditor for 1963, and that based on the practice of the auditor, such 1962 valuation would continue until the sexennial reappraisal, or until there was some cause for reappraisal and the auditor went through the actual procedure of making a reappraisal as provided by law.

The court finds further that the plaintiff's evidence that there had been no factual, physical or economic changes in the property between January 1, 1962, and January 1, 1963, was incontroverted. Furthermore, there was no evidence presented that the valuation of the premises had in any way increased between January 1, 1962, and January 1, 1963. The court, therefore, finds that there was no basis for justifying retention of the previous excessive assessed valuation for 1963, which the board of revision had already found to be excessive and illegal, and that the

auditor failed to comply with the statutory provision which requires the auditor to correct the tax duplicate. (R. C. 5715.14.)

The court finds further that it is obligatory upon the auditor to reassess all real property on a sexennial basis, and that the valuations thus found become prima facie the proper and legal assessed valuations of the premises for the sexennial period until reassessed, or until changed by the board of revision, or changed as provided by law.

The court finds that the defendants, either individually or in concert, choose an arbitrary date as to when additional complaints for a future year are not required, and subsequent to which additional complaints are required to be filed.

The court finds also that the taxpayer did not, in fact, receive notice that he had to file before January 1964, despite the pending complaint for 1962, if he wished to complain about 1963. No valid legal reasons were proffered by defendants.

The court finds further that there seems to be no valid legal reason for not requiring some complainants to refile if their case is heard before an arbitrary date, but require a refiling if they are heard after that date.

The court finds that the auditor is a member of the board of revision, and, therefore, is or should be cognizant of its handling of the complaints filed for its consideration, and including the timetable for their consideration and the board of revision decisions.

The court finds that frequently when the board of revision makes a finding after the payment of the first half taxes, this reduction in assessed valuation is compensated for by reducing the tax bill for the second half taxes.

The court finds that real estate taxes in Cuyahoga County, based on the 1963 assessed valuation, were payable in January 1964 and July 1964.

The court finds that the decision to reduce the assessed valuation of the subject property was reached on May 20, 1964.

The court finds that the second half taxes for the year

1963 were not payable until June-July payment day of 1964.

The court finds that the correction of the 1963 assessed valuation could have been made on the second half tax bills payable in 1964.

CONCLUSIONS OF LAW

1. The Auditor of Cuyahoga County is the assessor for all real estate in the county except only as to the powers as are conferred on the Tax Commissioner to assess property of public utilities. (R. C. 5713.01, 5715.01.)

2. County auditors possess only such powers as are conferred by statute and such implied powers as are necessary to put them into effect.

3. Taxes attach as a lien on real property as of January 1 of the year in which they become effective. (R. C. 5719.01.)

4. The board of revision accepts complaints on the assessed valuation of property, not on the basis of when taxes become a lien, but on the basis of the then current year for which taxes are paid. (R. C. 5715.19.)

5. "The auditor shall view and appraise, or cause to be viewed and appraised, each lot or parcel of real estate and the improvements located thereon at least once in each six-year period beginning with the year 1943." (R. C. 5713.01.)

6. "The auditor shall revalue and assess at any time all or any part of the real estate in such county at its true value in money where he finds that the same has changed in value or is not on the tax list at its true value." (R. C. 5713.01.)

7. "He may increase or decrease the value of any lot or parcel of real estate * * * so that every class of real property shall be listed and valued for taxation by an equal and uniform rule." (R. C. 5713.01.)

8. "When the auditor reassesses a class of property or any individual parcel of real estate he shall notify the owner of the real estate, or the person in whose name the same stands charged on the duplicate, by mail or in person, of the changes he has made in the assessments of such

property. Such notice shall be given at least thirty days prior to the issuance of the tax bills." (R. C. 5713.01.)

9. "Sections 5610 and 5611 empower the Tax Commission to hear appeal from the board of revision, but do not authorize the Tax Commission to make the appraisement; the law requires that the appraisement shall be made by the county auditor. * * * There is no provision in the law which authorizes the auditor to divest himself of the duty of personally making the appraisement. True, he may call to his aid and assistance experts and clerks, but he may not confer on them or any of them the power to do the things which the law commands the auditor to do." *G. A. Boeckling Co.* v. *Schwer*, 122 Ohio St. 40.

10. "Payment of the whole or any part of any real property tax or assessment for any year as to which a complaint or appeal is pending shall not abate the complaint or appeal or in any way affect the hearing and determination thereof." (R. C. 5715.21.)

11. The board of revision "shall hear and render its decision on such complaint within ninety days after the filing thereof with the said board." (R. C. 5715.19.)

12. "The determination of any such complaint shall relate back to the date when the lien for the taxes for the current year attached or the date as of which liability for such year was determined, and liability for taxes and for any penalty for nonpayment thereof within the time required by law shall be based upon the valuation or assessment as finally determined." (R. C. 5715.19.)

The court finds that the statutes permitting the revision of assessed valuations are remedial in character, and, therefore, require that they shall be liberally construed in order to promote their objectives and assist the parties in obtaining justice; and the failure of this construction would permit, in the present case, taxation contrary to Article XII, Section 2 of the Ohio Constitution, which, in effect, would constitute the taking of property without due process of law.

The court finds that Article XII, Section 2 of the Ohio Constitution requires that all real property shall be taxed

equally, and that ''land and improvements thereon shall be taxed by uniform rule according to value.'' It is the court's determination that the property was not taxed by uniform rule according to value as of January 1, 1963.

The failure to tax property uniformly is discriminatory and is contrary to Article XII, Section 2 of the Ohio Constitution and Section I of the Fourteenth Amendment of the United States Constitution, and constitutes the taking of property without due process of law, and the court so finds.

The court finds that R. C. 5715.01, 5715.02, and 5715.11 provide for a body called the Board of Revision, whose duty it is to review the assessed valuations of real property as determined by the auditor, and that their determination as to the proper and legal assessed valuation of any piece of real property supersedes and takes precedence over any assessed valuation found by the auditor on such property. The court finds that the plaintiff made a proper application to the board of revision, and that the board of revision did find that the property was overassessed and that according to the provisions of these statutes, the board of revision did reduce the assessed valuation for the year 1962, and that such assessed valuation was the legal assessed valuation as of January 1, 1962, and would have to be continued until further action by the auditor.

The court finds that the county auditor has the statutory duty to: ''assess all real estate situated in the county at its true value in money. The auditor shall view and appraise, or cause to be viewed and appraised, each lot or parcel of real estate and the improvements thereon at least once in each six-year period beginning with the year 1943.'' (R. C. 5713.01.) It is the finding of the court that subsequent to the board of revision's findings that the proper assessed valuation of the property for 1962 was $755,720, it was necessary for the auditor to make a reappraisal for the year 1963, in order to change its proper assessed valuation as determined by the board of revision. As previously indicated, the court finds no evidence of such reappraisal, and, therefore, the 1963 assessed valuation as

placed is illegal. (R. C. 5713.01, 5715.01, 5715.02, 5715.11, and 5715.14.)

The court finds that the auditor's assessed valuation as to real property must defer to the ultimate determination of the board of revision, and that once such decision as to valuation is reached, it must stand, except when such property is reassessed formally by the auditor. (R. C. 5715.11.)

The court finds that it is mandatory on both the auditor and the treasurer, if the tax duplicate is delivered to said County Treasurer, for the auditor or the treasurer to correct the tax duplicate according to the correction made by the board of revision. (R. C. 5715.14.) It is the court's finding that it was mandatory upon the auditor, or even the treasurer, to correct the assessed valuation determined on May 20, 1964, because the treasurer had not yet started collecting the last half of the 1963 taxes as of that date, and could have revised the subsequent tax bill accordingly, and that the failure to do so directly contravened their statutory obligations as provided in R. C. 5715.14.

The court finds that R. C. 5715.19 provides that it is mandatory upon the board of revision to hear complaints regarding the value of real property (R. C. 5715.11), and that such shall be heard and a decision rendered within ninety days after the filing. The court finds that the board of revision failed to follow this statutory requirement, and that its failure to carry out this requirement was certainly one of the major causes of the controversy before us.

The court also fails to find that there is any statutory provision for the arbitrary determination by the board of revision as to the break-even date as to when future complaints need or need not be filed. It is the holding of the court that only those requirements which are found in the statute and are clearly mandatory can be considered as jurisdictional. Otherwise, rules or procedure of local boards would take precedence over statutes and would defeat the statutory provisions enacted for the relief of over-assessed taxpayers.

It is also the court's opinion that R. C. 5715.19 is stated so as to prevent its being retrospective.

The section reads as follows: "A complaint against any valuation or assessment which appears upon the tax duplicate of the then current year may be filed on or before the time limited for payment of taxes for the first half year * * *."

The court fails to finds the word "only" or a similar limitation anywhere in the statute. Does this mean that each taxpayer has to file a complaint for each succeeding year until the sexennial reappraisal? Such a requirement would be an absurdity. Judicial decision has continually held that the Legislature intends to enact only what is reasonable (50 Ohio Jurisprudence 2d, Statutes, Section 238). Apparently, the auditor and the board of revision had reached the same conclusion, because the testimony indicated that this was not the practice.

And, let us look at the other side of the coin. If this requirement for yearly complaints were the law, would not the subsequent reduction of taxes, continuing without such complaints, be illegally made? And, would not the auditor, the treasurer and the board of revision be then legally bound to repay these illegal "refunds" of tax reductions? Certainly, we cannot claim that the Legislature had any such intention, which would be a necessary result if such complaints were indeed limited to one year—with a requirement that they be continued annually until the next sexennial reappraisal. In support of the court's contention that R. C. 5715.19 is prospective in nature, and any determination thereunder is included and continued to the sexennial reappraisal, the court finds the following headnote from *Elder & Johnston Co.* v. *Haines*, 107 Ohio App. 303, to be pertinent:

"2. Where the taxable value of property has been fixed for a prior year by a former judgment, and unless there has been a change in the value of the property, the county auditor has no obligation to revalue and reappraise such property when fixing a taxable value therefor for a subsequent year; and, in such subsequent case, where the

record of the former case shows the value therein set and it develops that there has been no change in the taxable value of the property, the trial court has no alternative but to fix the same value for the subsequent year.''

The court finds that to accept the interpretation of holding that R. C. 5715.19 requires the annual filing of complaints for tax reductions could not be within the meaning of a tax assessment law based on sexennial reappraisals. This law was enacted primarily for the correction of tax assessments made by the auditor in the course of the sexennial reappraisal, and it is the sexennial reappraisal on which the tax complaint is generally filed.

To interpret the section as a requirement to file annual complaints for each of the succeeding five years after the first assessment correction is an absurdity patent on its face. That it would lead to an unnecessary and useless burden on both taxpayers and county officials is obvious. It would lead to a multiplicity of lawsuits abhorred by the law. Of equally great importance, it would certainly lead to a serious question as to the legality, both of assessed valuations and tax reductions, in the cases where such complaints had not been filed annually as defendants claim the statute makes mandatory. There are also the collateral questions which arise as to the possible financial obligations placed on the auditor and the treasurer for collecting and accepting reduced taxes on reduced assessments illegally made based on such an interpretation.

The law is not retroactive. The law clearly states that overassessments cannot be complained of prior to a certain date of filing. The pragmatic propriety, both personal and civic, for such a provision is obvious. But, no word of prospective restriction is found in the statute. To insert one would create great problems and defeat the purpose of the law. It is the opinion of the court that such was not the intention of the Legislature.

In any event, aside from and regardless of the court's interpretation of R. C. 5715.19, the court finds that the assessed valuation on the premises as of January 1, 1963, was illegal and unconstitutional, that it was mandatory

upon the auditor or the treasurer to correct such assessed valuation, that no reappraisal had been made by the auditor for the year 1963 as required by statute, that said officials, therefore, failed to carry out the mandatory provisions of R. C. 5715.11 and 5715.14, and that such constituted the taking of property without due process of law, and based on such determination, the court will file an amended journal entry accordingly. The court further finds that the failure of the board of revision to hear the complaint within ninety days pursuant to R. C. 5715.19 was the proximate cause of taxpayer's not filing further complaint, not being instructed or receiving notice to do so, and the defendant should not profit by such failure.