## PURE OIL PIPE LINE CO. v. CORNISH et al.
## In re PURE OIL PIPE LINE CO.

Nos. 23464, 24112 (Consolidated). Opinion Filed April 11, 1933.

Alvin Richards and F. A. Calvert, for petitioner.

C. W. King, for defendant.

ANDREWS, J. ·This cause is before this court in two actions, one of which is an original proceeding in this court to enjoin the defendants from performing certain acts, and the other an appeal from certain orders of the defendants. This court was asked to take original jurisdiction in the first case and did so. In their briefs the defendants state that they have no objection thereto and that, since the matter is one of pressing public concern, they wish to have this court take jurisdiction thereof. By order of this court the two actions were consolidated in this court and the parties hereto have stipulated as to the facts. Under those conditions the action is in the form of a controversy submitted in accordance with the provisions of section 403, O. S. 1931 (section 846, C. O. S. 1921).

The question the decision of which is determinative of the issue in this case is

whether the property of the plaintiff is to be assessed by the State Board of Equalization or by the county assessors of the several counties in which it is located.

A considerable portion of the briefs is devoted to a discussion of whether or not the plaintiff is a common carrier of oil. We think that it is immaterial for a determination of the issue presented whether or not the plaintiff is a common carrier of oil. The record shows that it is a pipe line company transporting oil for hire for its parent company, the Pure Oil Company. That it transports oil for that company alone, that it has never transported oil for any other company, that it has never held itself out as a common carrier of oil, and that it may not be a common carrier at law, does not prevent it being a transporting company. It may be classified as such by the Legislature for taxation purposes under the authority of the provisions of section 22, article 10, of the Constitution, and under the authority of those provisions its property may be valued by different methods or means than is used for the valuation of other classes of property. It was under that constitutional authority that the Legislature changed the method of assessment by repealing the provisions authorizing assessments by township assessors and placing the assessing power in county assessors. For that reason we will not determine whether or not the plaintiff is a common carrier of oil.

A considerable portion of the briefs is devoted to a discussion of whether or not the plaintiff is in fact a public service corporation. We think that a determination of that question is unnecessary for a determination of the issue presented. While by the provisions of section 21, article 10, of the Constitution it is made the duty of the State Board of Equalization to assess all public service corporation property, and while that provision applies to property of public service corporations, as that term is defined by the Constitution, by the provisions of the same section it is made the duty of the State Board of Equalization to perform "such other duties as may be prescribed by law," and, under that authority, the Legislature may impose on the State Board of Equalization the duty to assess property of public service corporations, as that term is defined by the legislative enactment providing therefor. For that reason we will not determine whether or not the plaintiff is in fact a public service corporation.

The question for determination herein is one of taxation. Specifically, it is which of the state agencies established by law is authorized to make assessment for taxation purposes. That the property is subject to taxation is conceded. That the property is located in more than one county in the state is admitted.

The arrangement of the legislative provisions by the compilers of the Compiled Oklahoma Statutes 1921 and by the compilers of the Oklahoma Statutes 1931 is neither controlling nor persuasive. That was the work of individuals. We are concerned herein with legislative enactments and not with the arrangement of those legislative enactments by the compilers of a compilation of statutes.

At the first session of the Second Legislature, House Bill No. 168 was enacted. Chapter 38, S. L. 1909 (now St. 1931, secs. 12397-12411). That enactment was a general revenue bill providing for the raising and collecting of revenue and for the codification and revision of the laws of the state relating to revenue.

By section 1 of article 4 thereof the Legislature provided what the term "transportation company" should include, what the term "transmission company" should include, and what the term "public service corporation" should include, when used with reference to the subject of ad valorem taxation. Those provisions had no reference to any other subject. Those provisions were materially different from the provisions of section 29, article 9, of the Constitution. They included, in terms, companies not included in the constitutional provisions. We quote the provision with reference to public service corporations, as therein limited, as follows:

"The term 'public service corporation,' as used in this article, shall include all transportation and transmission companies, all gas, electric, light, heat and power companies and all waterworks and water power companies, and all persons authorized to exercise the right of eminent domain or to use or occupy any right of way, street, alley, or public highway, along, over or under the same in a manner not permitted to the general public."

By section 2 of that article it was provided that the property of all public service corporations should be assessed annually by the State Board of Equalization in the manner prescribed in that act.

We have the question, therefore, of whether the plaintiff is a public service corporation within the meaning of that term, as

used in the revenue provision, supra, without regard to whether or not it is, in fact, a public service corporation or whether or not it is a public service corporation within the meaning of some constitutional or other legislative provision.

While the legislative provision with reference to transportation companies may have been limited, in terms, to those engaged in such business as common carriers, there was no such limitation, in terms, as to transmission companies, and since transportation companies and transmission companies were included within the term "public service corporation" along with other companies, without any provision as to their being common carriers, it is evident that the Legislature intended to include in the term "public service corporation" companies other than transportation and transmission companies engaged in business as common carriers. By the express language used, there was included in the term "public service corporation," not only transportation and transmission companies, but gas, electric light, heat and power companies, waterworks and water power companies, and all persons authorized to exercise the right of eminent domain or to use or occupy any right of way, street, alley, or public highway, along, over, or under the same in a manner not permitted to the general public, without regard to whether or not they were common carriers.

While the plaintiff may not come within the meaning of the term "transportation company," as therein used, and while it does not come within the meaning of the terms transmission company, gas company, electric company, light company, heat company, power company, waterworks company, or water power company, it does come within the meaning of that provision referring to all persons authorized to exercise the right of eminent domain or to use or occupy any right of way, street, alley, or public highway, along, over, or under the same in a manner not permitted to the general public. The plaintiff contends that it has never exercised the right of eminent domain. Such a contention is shown by the record in Pierce Oil Corp. et al. v. Phoenix Refining Co. et al., 79 Okla. 36, 190 P. 857. Therein this court said:

"While this may be true as to the land owned by individuals, yet there are other rights granted to said company by virtue of section 4305, Rev. Laws 1910, relating to the highways, and rights under and by virtue of other sections of the statute from which they have received the benefit therefrom."

That statement is applicable to the facts shown by the record in this case. While the record shows that the plaintiff has not exercised the right of eminent domain in building the pipe line in question, it has used and occupied public highways in a manner not permitted to the general public, that is, it has laid its lines under the public highways.

The conclusion which we have reached is required by other provisions of the act. Among those we call attention to section 3 of the article, the provisions of which require every public service corporation organized, existing, or doing business in the state to return sworn lists or schedules of taxable property as thereinafter provided. Thereinafter it was provided that returns should be made to the State Auditor by every railroad, street railway, and interurban company doing business in the state (section 4 of the article), by every transmission company doing business in the state (section 5 of the article), by every express company doing business in the state (section 7 of the article), by every gas, light, heat and power company doing business in the state (section 8 of the article), by every electric, light and power company doing business in the state (section 9 of the article), by every waterworks and power company doing business in the state (section 10 of the article), by every sleeping car company, freight car company, car corporation or company engaged in business in the state (section 11 of the article), and by every pipe line company doing business in the state (section 6 of the article). Thereby it identified pipe line companies as one of the companies included in the term "public service corporation," as used in this act. We find nothing in the act that limits pipe line companies to those engaged in business as common carriers.

The plaintiff contends that the Legislature is without authority of law to declare a private corporation doing business as such to be a public service corporation. In support of that contention it cites New State Ice Co. v. Liebmann, 285 U. S. 262, 52 S. Ct. 371, 76 L. Ed. 747; Williams v. Standard Oil Co., 278 U. S. 235, 73 L. Ed. 287; Producers Transportation Co. v. Railroad Commission of California, 251 U. S. 228, 40 S. Ct. 131, 64 L. Ed. 239; Frost v. Railroad Commission, 271 U. S. 583, 46 S. Ct. 605, 70

L. Ed. 1101; Huron Portland Cement Co. v. Woodworth, 19 Fed. (2d) 530; Associated Pipe Line Co. v. Railroad Commission of California et al. (Cal.) 169 P. 62, and other decisions. None of those decisions hold that the Legislature does not have authority to classify property for taxation purposes or to specify the agency of the state that should assess property for taxation purposes. Those decisions are not persuasive. They are in conflict with the plain and unambiguous provisions of our Constitution with reference to taxation.

By the provisions of section 20, article 10, of the Constitution, the Legislature was granted authority to confer upon the proper authorities of any county, city, town, or other municipal corporation, respectively, by general laws, the power to assess and collect taxes for those political subdivisions of the state. By section 2, article 10, of the Constitution, it was required to provide by law for an annual tax sufficient with other resources to defray the estimated ordinary expenses of the state for each fiscal year. By the revenue enactment, supra, the Legislature provided for the assessment of pipe line companies by the State Board of Equalization and it authorized the State Board of Equalization, after it had valued and assessed such property, to cause the same to be certified by the State Auditor to the county clerks of each and every county in which any portion of the property is located. Section 14 of the article. It directed the county clerks to certify the same to the proper officers of the different school districts, cities, towns, and townships in the county into and through which any portion of the property is located, to be placed on the tax rolls for the benefit of the school districts, cities, towns, and townships, and to place the same on the tax rolls of the county to be subject to the same rate of levy as is other property. Section 15 of the article.

The power of the Legislature to enact the provisions of the revenue act, supra, was granted by the provisions of section 22, article 10, of the Constitution, whereby it was provided that nothing in the Constitution should be held or construed to prevent the classification of property for the purpose of taxation and the valuation of the different classes by different means or methods. By the revenue act, supra, the Legislature classified pipe line companies as public service corporations for taxation purposes. It provided that the property of such corporations

should be assessed by the State Board of Equalization. The fact that a different officer is authorized to value its property than is authorized to value other property in no wise violates the provisions of that section. See In re Gross Production Tax of Wolverine Oil Co., 53 Okla. 24, 154 P 362, wherein it was held:

"The power of the Legislature to distinguish, select, and classify objects of taxation has a wide range of discretion. While the classification must be reasonable, and not arbitrary, there is no precise application of the rule of reasonableness, and there cannot be an exact exclusion or inclusion of persons or things. This right is expressly recognized in section 22, art. 10, of the Constitution, which provides that nothing therein shall be held or construed to prevent the classification of property for purposes of taxation and the valuation of different classes by different means or methods.

"To justify judicial interference, the right to classify being a legislative function, the classification adopted must be based on an invidious and unreasonable distinction with reference to the subject of the tax. Unless this appears, the court will not declare the classification void, though it may not approve its terms, or may question the wisdom of its enactment."

See, also, Trustees, Executors & Securities Ins. Corp., Ltd., et al. v. Hooton, Co. Clerk, 53 Okla. 530, 157 P. 293. The classification adopted by the Legislature does not appear to be based on an invidious or unreasonable distinction, under the facts shown by the record in this case. This pipe line extends into many counties of the state. The character and location of the property is such that the value in any one county, city, town, township, or school district is dependent, to a large extent, on the value of the property as a whole. In re Assessment of Western Union Telegraph Co., 35 Okla. 626, 130 P. 565; In re Oklahoma Gas & Electric Co., 67 Okla. 301, 171 P. 26. It may be that the Legislature thought that a more fair and equitable assessment thereof could be made by a board having jurisdiction over all of the property in the state, rather than by the county assessor in each of the counties in which any portion of the property is located. It was authorized to make provision therefor.

The provisions of the 1909 act, supra, were carried forward with no change material herein and were made a part of the Revised Laws of 1910. They appear therein as article 4, chapter 72. They appear as sections 12397 to 12411, O. S. 1931.

That the term "public service corporation" may have different meanings is shown by the provision of section 12a, article 10, of the Constitution. The tax collected for the maintenance of the common schools of the state from public service corporations which operate in more than one county of the state are required, by the provisions of that section, to be paid into the common school fund and to be distributed as are other common school funds of the state. The tax collected from public service corporations under the provisions of the revenue act, supra, are for the benefit of counties, cities, towns, townships, school districts, and other municipal subdivisions. Sections 14 and 15, article 4, supra (sections 12410 and 12411, O. S. 1931).

The fact that the Corporation Commission makes an order exempting a pipe line company under the provisions of section 11554, O. S. 1931, in no wise operates to exempt such a company from assessment for ad valorem tax purposes by the State Board of Equalization. Such was the holding of this court in Re Assessment of Champlin Refining Co., 129 Okla. 166, 264 P. 160. Such an exemption has no application to taxation. There is no authority in the Corporation Commission to exempt property from taxation or from the method of assessment thereof provided by the Legislature.

We, therefore, limit this decision to the issue presented, which is one of ad valorem taxation, and hold that the plaintiff is a public service corporation within the meaning of that term as used in the laws with reference to the assessment of property for ad valorem taxation purposes.

We find no error in the assessment as made by the State Board of Equalization and its order is affirmed.

The prayer for a writ of prohibition is denied.

RILEY, C. J., CULLISON, V. C. J., and SWINDALL, McNEILL, OSBORN, BAYLESS, BUSBY, and WELCH, JJ., concur.